UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:21CR00013 RLW |
| TERRY WILLIAMS, | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Terry Williams, represented by defense counsel John Lynch, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the indictment, the United States agrees to dismiss Count Seven at the time of sentencing. The United States further agrees that no further federal prosecution will be brought in this District relative to the defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the indictment.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. Finally, the parties acknowledge that the Court is not a party to the plea agreement and is not bound by its terms.

### 3. ELEMENTS:

As to the offense in **Count One**, the Defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

(1) Two or more people reached an agreement to commit the crime of distributing and possessing with intent to distribute methamphetamine;

(2) The Defendant voluntarily and intentionally joined in the agreement;

(3) At the time the Defendant joined in the agreement, the Defendant knew the purpose of the agreement; and

(4) While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

### 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

## The Conspiracy

From January 2019 until the date of the indictment (January 6, 2021) Brendon Thomas (hereafter "Thomas"), Joe Holliman (hereafter "Holliman" or "Defendant"), Dedrick Jordan (hereafter "Jordan"), Terry Williams (hereafter "Williams") and others, both known and unknown, conspired to distribute methamphetamine and other controlled substances in the Eastern District of Missouri and elsewhere. Williams, Jordan, Clifford Davis, Jr. (hereafter "Davis") and Maria Flores-Cervantes (hereafter "Flores-Cervantes") were connected to the source of supply located in the Los Angeles, California area, which is located in the Central District of California. Williams, Thomas, Holliman and Jordan were primarily responsible for arranging for the supply of methamphetamine and in turn, supplying the narcotics to various street-level distributors in the Eastern District of Missouri, including Matthew Aubin (hereafter "Aubin"), Jacqueline Harris (hereafter "Harris"), Thomas Fogle (hereafter "Fogle"), Richard Clark (hereafter "Clark"), Sarah Reynolds (hereafter "Reynolds"), Alexandra Chambers (hereafter "Chambers"), Deidre Medcalf (hereafter "Medcalf"), Joseph Suraud (hereafter "Suraud"), David Nuelle (hereafter "Nuelle") and others.

The proceeds from the sale of the methamphetamine (and at times marihuana and heroin) were converted from U.S. currency into money orders or money grams, in order to disguise and conceal the actual source of the money. U.S. currency representing unlawful proceeds from the sale of methamphetamine and other illegal narcotics was also electronically transferred utilizing

3

various methods affecting interstate commerce, specifically cash applications like "Square" and Wal-Mart money transfers. Commercial banks were also utilized wherein defendants would structure cash deposits in order to conceal or disguise the true source of the deposits. The money in turn would then be transferred from bank to bank via wire services or withdrawn using "Square Cash," "Venmo" and other point of sale debits affecting interstate commerce. The defendants knew the U.S. currency was derived from the unlawful sale of methamphetamine and other illegal narcotics and intentionally utilized various financial transactions affecting interstate commerce, in order to facilitate their drug distribution activities and to intentionally conceal the true source of the money.

The investigation (which was primarily conducted by the Drug Enforcement Administration, Home Land Security Investigations, United States Postal Inspection Service and Jefferson County Municipal Enforcement Group) revealed that Thomas, Holliman and Jordan each maintained a separate residence which they utilized to receive and store narcotics and cash proceeds from the sale of narcotics. The methamphetamine and other narcotics were shipped from the Central District of California (primarily the Los Angeles area) to the Eastern District of Missouri through the U.S. mail and via couriers who drove vehicles with hidden compartments. They in turn would distribute the narcotics from their residences and store the U.S. currency derived from the sale of the narcotics at their respective residences. Street-level distributors would travel to the St. Louis metropolitan area in order to be supplied with methamphetamine and other narcotics. Other defendants to include Harris, Fogle, Clark, Reynolds, Karll, Chambers, Medcalf, Suraud, Nuelle and Aubin would then re-distribute the narcotics.

During the investigation, packages mailed from the source in Los Angeles and destined for the Eastern District of Missouri were interdicted by the United States Postal Inspection Service in February 2020 and again in July 2020. The packages contained a total of 1,322.4 grams of crystal methamphetamine, with a purity of at least 97% and 8,942.1 grams of marihuana. Surveillance footage captures Williams mailing a package on July 11, 2020 from the Los Angeles area to co-conspirator Jacqueline Harris. After the package was intercepted, it was processed for fingerprint evidence. Analysis confirmed that Williams' fingerprints were found on the package. After a search warrant was obtained for the package, it was opened by investigators and revealed 3,325 grams of marijuana and 439.4 grams of actual methamphetamine.

On April 18, 2020 Davis and Flores-Cervantes were stopped in Phelps County, Missouri driving Jordan's Nissan Rogue. The Rogue had been tracked from St. Louis to Los Angeles and back to Missouri by the DEA who had utilized a court-ordered GPS tracking device. Law enforcement discovered a hidden compartment in the vehicle which contained a loaded pistol and what the DEA lab determined to be 11.97 kilograms of crystal methamphetamine with an average purity level of 94% and 47.8 grams of heroin.

On June 18, 2020 investigators executed three residential search warrants at the residences of Thomas, Jordan and Holliman. At Jordan's residence, investigators discovered $129,776 in U.S. currency, 190 grams of 97% pure methamphetamine, and a digital scale. At Holliman's residence, investigators discovered vacuum-sealed bags of marihuana, electronic scales, ammunition, three (3) firearms, and 4.3 grams of 96% pure methamphetamine. It was determined that unindicted co-conspirator Ebony Silinzy had purchased two of the firearms on behalf of Holliman who was a convicted felon and prohibited from purchasing or possession

firearms. At Thomas' residence, investigators found three (3) firearms, clear plastic bags containing marihuana, a money counter and $17,520 U.S. currency.

From January 2019 until the date of the indictment, the conspiracy was responsible for distributing in excess of 50 grams of actual methamphetamine. The total seizures of methamphetamine during the investigation exceeded 15 kilograms.

As to Defendant Williams, the precise amount of methamphetamine for which he is responsible cannot be calculated precisely, but the parties stipulate and agree for sentencing purposes that Defendant is responsible for at least 150 but less than 500 grams of actual methamphetamine.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty is:

**Count 1:** imprisonment of not less than 10 years nor more than life, a fine of not more than $10,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 5 years.

### 6. U.S. SENTENCING GUIDELINES: 2018 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that he following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### Count One

**a. Chapter 2 Offense Conduct:**

6

**(1) Base Offense Level:** The parties agree that the base offense level is 32, as found in Section 2D1.1(c)(4) as Defendant is responsible for distributing between 150 and 500 grams of actual methamphetamine.

**(2) Specific Offense Characteristics:** None.

**b. Chapter 3 Adjustments:**

**(3) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29.

**c. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**d. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

8

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**

Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of

the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

**9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed

mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

10/31/2022
Date

PAUL J. D'AGROSA (#36966MO)
Assistant United States Attorney

10/31/22
Date

TERRY WILLIAMS
Defendant

10/31/22
Date

JOHN LYNCH
Attorney for Defendant

13